Weygandt, C. J.
This controversy stems from two conceded facts.
Nor is there a dispute as to the principles of law involved.
The difference arises in the application of the law to the facts. -
The first fact is that The Christian Church of Char-don and the First Congregational Church of Chardon have been consolidated under the name of The Pilgrim-Christian Church.
The second fact is that in his will the testator used the language, “The Christian Church of Chardon, Ohio, as now organized and functioning.”
*533 In its entirety, item four of the will reads as follows :
“Fourth. To The Christian Church of Chardon, Ohio, as now organized and functioning, I give, devise and bequeath the sum of ten thousand ($10,000) dollars, in trust, and under the conditions herein set forth. My executor hereinafter named (or if he should decline to accept said trust, such person as shall be appointed by the Probate Court of Geauga County), shall act as trustee of said fund for ten (10) years following the date of my death; said sum of $10,000 shall be invested as may be deemed best in the opinion of said trustee and the Probate Court, and the proceeds given said church to be used by them in the upkeep and maintenance of said church. At the end of the ten (10) year period if The Christian Church is functioning as a church organization, then the amount so held in trust is to be given them absolutely.”
The plaintiff contends that The Christian Church of Chardon is no longer in existence and that hence the legacy has lapsed.
The defendant The Pilgrim-Christian Church relies strongly on the provisions of Section 10009-1, General Code (Section 1715.10, Revised Code), which then read as follows:
“Any two or more churches, congregations, or religious societies, whether incorporated or unincorporated, which are self-governing organizations and situated in the same township or municipality, may unite their memberships and properties and continue their identity and common usages or polity in and by means of a consolidated corporation to be formed by agreement in writing made, acknowledged and signed by their respective trustees and filed in the office of the Secretary of State. Such agreement shall set forth the name of the consolidated corporation, the *534 proceedings by which the constituent organizations authorized their trustees so to act, and the designation of a convenient time and place at which such united membership shall first meet and provide for the adoption of regulations consistent with such common usages or polity and for the appointment of officers pursuant to such regulations. Upon the filing of such agreement the existence of each such constituent organization shall be merged into that of the consolidated corporation which shall thenceforward in accordance with said agreement be a single religious corporation not for profit, the members, officers and conduct of which shall be as in such regulations provided. Such consolidated corporation shall from its inception be vested with all the rights and properties and charged with all the obligations and duties of such constituent organizations; and the right, title, possession, use, interest, or benefit, in respect to every past and future devise, bequest, conditional gift, trust, and property or fund restricted or held to particular uses, when so vested in or claimed by such consolidated corporation as a result of such merger, shall be deemed and held to belong to it as continuing without interruption the existence and identity of the constituent organization originally named as taker or beneficiary thereof.”
In a succinct comment the Court of Appeals well summarized the effect of this statute as follows:
“The language used in this section indicates that while The Christian Church, as a separate entity, no longer factually exists as such, yet it, as a matter of law, continues to exist for the purposes of the trust bequest, and The Pilgrim-Christian Church stands in the same position as The Christian Church would have had the consolidation never been accomplished.
( i # ♦ #
“These provisions are quite convincing indications *535 that the Legislature intended this section as an anti-lapse provision in such a case as that before us to the same extent that the provisions of General Code Section 10504-73 prevents the lapse of a legacy in certain other cases due to the death of the named beneficiary.”
Furthermore, it is fundamental that the law favors charitable bequests and does not favor lapses.
But is the effect of this destroyed by the language of the testator in referring to The Christian Church “as now organized and functioning?”
The Court of Probate held these to be words of limitation and a condition on the vesting of the legacy; but the Court of Appeals regarded them as words merely descriptive of the church the testator had in mind.
In construing a will the primary task, of course, is to discover the intent of the testator. In the instant case the sequence of the facts is interesting and persuasive. For many, many years the decedent was a member of The Christian Church of Chardon. On November 10, 1949, he executed this will. At that time the consolidation of the two churches was being discussed and was well under way. He was aware of the provisions of Section 10009-1, General Code, supra, inasmuch as they were read in open meetings attended by him. The consolidation was completed on July 7, 1950—more than four months before his death. On September 3, 1950, as a member he signed a pledge card for the support of the consolidated church in the same amount as he had pledged previously to The Christian Church. He continued to attend the services of the consolidated church until shortly before his death on November 11, 1950. It is evident that the formal dissolution of the old church corporation and the technical creation of a new one under a new name did not prevent him from considering that it still was his church. Had he felt otherwise, he could *536 have rewritten his will or could have employed the device of a codicil to eliminate the church as an odject of his bounty. Apparently it would have been a matter of very great surprise to him if anyone had suggested to him that he did not wish his church to be a beneficiary under his will. He even named the pastor of the churches—old and new—and made him a beneficiary also.
Hence, the Court of Appeals was correct in holding that the legacy to the church did not lapse, and the judgment is affirmed.

Judgment affirmed.

Matthias, Hart, Zimmerman, Stewart, Bell and Taet, JJ., concur.